**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00711-CNS-SBP

JOHN J. FRIE,

Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and
STATE FARM FIRE AND CASUALTY COMPANY,

Defendants.

---

**ORDER**

---

**Susan Prose, United States Magistrate Judge**

This insurance case is before the court on a narrow discovery issue: whether Plaintiff must disclose to Defendants, his insurers, the amount of his settlement with the at-fault parties to pursue his claim for underinsured motorist ("UIM") benefits. For the reasons below, the court finds disclosure is not required because Defendants consented to the settlement.

**BACKGROUND**

Plaintiff was injured in an auto accident on July 2, 2021. In June 2024, he filed an action in state court asserting claims against the at-fault driver (who was acting in the scope of his employment), the driver's employer, and Defendants. Following a mediation in February 2025 that was attended by all parties, Plaintiff reached a settlement with the at-fault parties, who were insured by Emcasco Insurance Company ("Emc Insurance") under a policy with bodily injury limits of $1 million. The parties to the settlement agreement agreed that the terms of the

settlement would remain confidential. Once the at-fault parties were dismissed from the state court action, Defendants removed the case to this court.

Plaintiff asserts claims for UIM benefits under auto and umbrella policies he carried with Defendants and for unreasonable denial or delay of benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116. His pending motion to amend the Complaint by adding a common law bad faith claim will be addressed in a subsequent order.

After Plaintiff refused Defendants' request to produce a copy of the settlement agreement with the at-fault parties, Defendants issued subpoenas to the at-fault parties seeking the same. Plaintiff moved to quash the subpoenas. The court denied the motion without prejudice but directed Defendants not to execute the subpoenas to allow the parties to confer in accordance with the court's joint discovery procedures. Plaintiff then provided Defendants with a copy of the settlement agreement—with the settlement amounts redacted—but Defendants continue to insist they are entitled to that information. After the parties submitted a Joint Dispute Statement, the court held a discovery hearing on October 6, 2026, providing ample opportunity for the parties to be heard on this matter. Additional background information is incorporated into the analysis.

**LEGAL STANDARD**

Rule 26(b)(1) permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The party seeking production has the initial burden of showing relevance. *See Chung v. Lamb*, No. 14-cv-03244-KLM, 2017 WL 10619941, at *3 (D. Colo. Oct. 24, 2017) (citing *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006)). Relevance under Rule 26(b)(1) is "broadly construed" in relation to discovery, and a request is considered relevant "if there is 'any

possibility' that the information sought may be relevant[.]" *Stanton v. Encompass Indem. Co.*, No. 12-cv-00801-PAB-KLM, 2013 WL 2423094, at *2 (D. Colo. June 4, 2013) (quoting *Cardenas v. Dorel Juv. Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005)).

The party seeking discovery bears the initial burden of establishing relevance, but when the moving party has established relevance, or the discovery appears relevant on its face, the party resisting discovery bears the burden of supporting its objections. *See generally JL v. Regis Univ.*, No. 21-cv-00580-DDD-NYW, 2022 WL 1443059, at *2 (D. Colo. May 6, 2022); *see also Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding that the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Constr. Co., Inc. v. OneBeacon Ins. Co.*, Nos. 08-1250-MLB-KGG, 08-2392-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request."). The resisting party's burden is not satisfied by merely asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004) (quotation omitted).

## ANALYSIS

At the discovery hearing, the parties agreed that Plaintiff's recovery from Defendants hinges on whether he can demonstrate that his damages from the accident exceed the $1 million in coverage that was available under the at-fault parties' policy. *See Jordan v. Safeco Ins. Co. of Am., Inc.*, 348 P.3d 443, 449 (Colo. App. 2013) (concluding that pursuant to amendments to Colorado's UIM statutory regime in 2008, "UIM coverage is payable for damages exceeding the

tortfeasor's liability policy limit"); *see also Tubbs v. Farmers Ins. Exch.*, 353 P.3d 924, 927 (Colo. App. 2015) ("Regardless of what amount, if any, the insured receives from the liable party, the UIM insurer is only required to pay damages in excess of the tortfeasor's legal liability coverage limit."). Thus, the underlying settlement amount does not bear directly on Defendants' potential liability.

Defendants contend nonetheless that the settlement amount is critical information needed for their investigation of Plaintiff's UIM claim. Specifically, they argue that they need the settlement amount to determine whether Plaintiff complied with policy provisions requiring him to obtain consent before entering a settlement agreement and to cooperate with their investigation. Neither rationale persuades the court that Plaintiff must disclose the settlement amount.

### A. Defendants Have Not Shown the Settlement Amount Implicates Plaintiff's Compliance with the Policies' Consent Requirements.

Defendants' contention that the settlement amount impacts their ability to determine whether Plaintiff complied with the policies' consent requirements lacks merit. There is no dispute that Plaintiff was required to obtain Defendants' consent before entering into a settlement agreement with an underinsured party. On April 18, 2023, Defendants provided Plaintiff's counsel with a letter, stating, in pertinent part, as follows:

> State Farm consents to the settlement of the $1,000,000 policy limits of Emc Insurance's Liability policy with our insured, John Joseph Frie. State Farm does not intend to pursue subrogation against Emc Insurance or its insured(s) for any payments made from the Underinsured Motorist coverage of State Farm Mutual Automobile Insurance Company.
>
> State Farm agrees that by settling the Liability claim with Emc Insurance, John Joseph Frie does not prejudice his ability to present an Underinsured Motorist claim with State Farm.

ECF No. 82-3 at 2. Although Plaintiff did not reach a settlement with the at-fault parties until nearly two years later, Defendants do not contend that they ever revoked this consent or imposed any new conditions on Plaintiff's ability to present a UIM claim after settling with the at-fault parties.

At the discovery hearing, Defendants asserted that the consent provided in the April 18 letter was conditioned on Plaintiff obtaining a $1 million settlement. In their view, the amount of Plaintiff's settlement is relevant to the issue of whether Defendants provided valid consent. They made a similar argument in a May 15, 2025, letter to Plaintiff, where they stated that "State Farm previously gave permission for a policy limits settlement under different circumstances, but have no record of a request for permission to enter into the settlement agreement after the file went into litigation." ECF No. 79-4 at 2. But under the circumstances, the court sees no reason Plaintiff was not entitled to rely on the consent provided in the April 18 letter. Defendants' strained interpretation of the April 18 letter is untenable for at least three reasons.

First, the April 18 letter lacks any express language prohibiting Plaintiff from accepting a settlement of less than $1 million. The court expects that a reasonable insurer intending to impose such a limitation on its consent would say so explicitly. Moreover, even if the letter could be construed as ambiguous, the interpretation Defendants now endorse violates the principle that in the insurance context "ambiguous terms are to be construed against the insurer that drafted the policy and in favor of policy coverage." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 619 (Colo. 1999). Thus, the court finds the language of the April 18 letter, which was never revoked or modified, did not fairly place Plaintiff on notice that he did not have Defendants' consent to settle with the at-fault parties for less than $1 million.

Second, the amount of any settlement between Plaintiff and the at-fault parties does not bear directly on Defendants' potential liability, which, as mentioned above, depends on the policy limits of the Emc Insurance policy, not the amount Plaintiff accepted to settle his claims against the at-fault parties. *See Jordan*, 348 P.3d at 449; *see also Burkhart v. Am. Fam. Mut. Ins. Co.*, No. 15-cv-0187-WJM-MEH, 2016 WL 11692345, at *8 (D. Colo. Oct. 11, 2016). Defendants have provided no persuasive rationale for why the amount of the settlement matters to them or why their consent would reasonably be conditioned on the amount of any settlement. In other words, they have not explained how not knowing the settlement amount prejudices them. Although knowing the settlement amount might be helpful to Defendants in litigating this case, the court discerns no prejudice to their ability to investigate Plaintiff's claim based on Plaintiff's unwillingness to disclose the settlement amount.

Third, Defendants' other conduct in this case is not consistent with its current position that the April 18 letter was intended to provide only limited consent to settle. For example, there is no indication that Defendants expressed any concerns that they might have had about Plaintiff reaching a settlement with the at-fault parties around the time of the February 2025 mediation. And, even after learning about the settlement, there is no indication that Defendants informed Plaintiff before their May 15 letter that the policies' consent requirements might be at issue. If Defendants believed Plaintiff violated the terms of the policy by entering into the settlement agreement, the court expects they would have acted sooner instead of remaining silent around the time of the mediation and for three months afterward.

Therefore, the court finds Plaintiff was entitled to rely on Defendants' consent, as expressed in the April 18 letter, when he entered the settlement agreement with the at-fault

parties. Consequently, to the extent Defendants' investigation into whether Plaintiff complied with the policies' consent requirements is at all relevant, the court is not persuaded that the settlement amount is discoverable here.

**B. Defendants Have Not Shown the Settlement Amount Implicates Plaintiff's Duty to Cooperate Under the Policies.**

Defendants also argue that they need to know the settlement amount to support their affirmative defense of failure to cooperate. But this argument is largely foreclosed by the court's determination that they gave Plaintiff consent to enter into the settlement agreement.

Further, to successfully assert the affirmative defense of failure to cooperate, Defendants must show that (1) Plaintiff failed to cooperate in some material and substantial respect, and (2) this materially and substantially disadvantaged Defendants. *See Hall v. Allstate Fire & Cas. Ins. Co.*, 20 F.4th 1319, 1323 (10th Cir. 2021). Because Defendants have not established the settlement amount is relevant, the court is not persuaded that Plaintiff's failure to disclose it satisfies either factor.

Nor have Defendants shown that the settlement amount is relevant for purposes of Colo. Rev. Stat. § 10-3-1118. Assuming without deciding that the statute may apply to post-litigation conduct, Defendants have not shown that the settlement amount comprises "information a reasonable person would determine the insurer needs to adjust the claim filed by the insured or to prevent fraud." Colo. Rev. Stat. § 10-3-1118 (1)(d). In addition, because Defendants first requested a copy of the settlement in February 2025, their May 15 letter was well past the 60-day deadline to notify Plaintiff of any failure to cooperate premised on his failure to produce the settlement agreement. § 10-3-1118(1)(e)(I).

Under the circumstances, Defendants have failed to show that the settlement amount is

relevant to their ability to assert a failure to cooperate defense.

## CONCLUSION

Therefore, Defendants' request for an order compelling Plaintiff to disclose the settlement amounts is **DENIED**. The court hereby **WITHDRAWS** its previous Order denying Plaintiff's Motion to Quash without prejudice, and that Motion is now **GRANTED** for the reasons stated in this Order.[1]

DATED: October 14, 2026

BY THE COURT:



Susan Prose
United States Magistrate Judge

[1] Fed. R. Civ. P. 72 provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").